Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| P.C., and C.S., individually and on behalf of M.C.S. a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and the OGLETREE, DEAKINS, NASH, SMOAK & STEWART GROUP MEDICAL PLAN.<br><br>Defendants. | COMPLAINT<br><br>Case No: 2:23-cv-331 |

Plaintiffs P.C. and C.S., individually and on behalf of M.C.S. a minor, through their undersigned counsel, complain and allege against Defendants United Healthcare Insurance Company, United Behavioral Health (collectively "United") and the Ogletree, Deakins, Nash, Smoak & Stewart Group Medical Plan ("the Plan") as follows:

//

//

1

**PARTIES, JURISDICTION AND VENUE**

1. P.C., C.S., and M.C.S. are natural persons residing in Fulton County, Georgia. P.C. and C.S. are M.C.S.'s parents.

2. United Healthcare Insurance Company is headquartered in Hennepin County, Minnesota and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case. United Behavioral Health is the mental health arm of United Healthcare Insurance Company and was involved with the processing of the claims and appeals for this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). P.C. was a participant in the Plan and M.C.S. was a beneficiary of the Plan at all relevant times. P.C. continues to be a participant of the Plan.

4. M.C.S. received medical care and treatment at Open Sky Wilderness Therapy ("Open Sky") from September 23, 2020, to December 23, 2020. Open Sky is a licensed treatment facility with campuses in Utah and Colorado, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. United denied claims for payment of M.C.S.'s medical expenses in connection with her treatment at Open Sky.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because United does

business in Utah and has a large claims processing facility in Salt Lake City where the claims and appeals were sent for processing. Also, Open Sky provides treatment in Utah.

8. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely privacy will be preserved for all parties.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Open Sky

10. M.C.S. was admitted to Open Sky on September 23, 2020.

11. In an Explanation of Benefits statement dated August 23, 2021, United denied payment for M.C.S.'s treatment under code AY:

> THE PROCEDURE CODE SUBMITTED IS NOT ELIGIBLE FOR PAYMENT. THEREFORE, NO BENEFITS ARE PAYABLE FOR THIS SERVICE.

12. On February 14, 2022, P.C. submitted a level one appeal of the denial of payment for M.C.S.'s treatment. He argued that M.C.S.'s treatment was a covered benefit under the terms of the Plan and should have been approved.

3

13. He reminded United that he was entitled to certain protections under ERISA during the review process, including a full, fair, and thorough review conducted by appropriately qualified reviewers which took into account all of the information he provided and which gave him the specific reasoning for the determination, referenced the specific plan provisions on which the denial was based, and which gave him the information necessary to perfect the claim.

14. He asked that the reviewer be knowledgeable about clinical best practices and generally accepted standards for outdoor behavioral health programs and that they be trained in the details of MHPAEA. He also encouraged them to reach out to Dr. Michael Gass, an expert in the outdoor behavioral health field, and asked for a physical copy of any documentation related to the determinations, including any reports or case notes.

15. He wrote that Open Sky was licensed as a residential childcare facility and that the claims were submitted accordingly. Despite this however, United appeared to have flagged claims from Open Sky for automatic denial.

16. He wrote that regardless of whether the claims were submitted under the 1001 code for residential treatment or the 1006 code for wilderness programs, they were eligible for payment and should have been approved.

17. P.C. wrote that his summary plan description contained no exclusions for the outdoor behavioral health treatment M.C.S. received, and that "charges resulting from the treatment of Mental Illness or Substance Abuse" were listed as covered benefits when provided by a licensed facility like Open Sky.

18. P.C. expressed concern that the denial of payment for M.C.S.'s treatment was a violation of MHPAEA. He wrote that MHPAEA compelled insurance companies to ensure

coverage for behavioral health benefits was offered at parity with coverage for analogous medical or surgical benefits.

19. P.C. identified skilled nursing, subacute rehabilitation, and inpatient hospice as some of the medical or surgical analogues to the treatment M.C.S. received.

20. P.C. voiced his suspicion that United was imposing non-quantitative treatment limitations based on facility type and provider specialty in violation of MHPAEA. He wrote that he was confident this was the case as, even though Open Sky satisfied all of the Plan requirements to be considered an eligible facility, United stated that it was not eligible for payment.

21. He argued that United did not discriminate against analogous medical or surgical facilities in this manner, and asked if United flagged intermediate level medical or surgical facilities for automatic denial irrespective of what the governing plan documents dictated. He asked United to perform a MHPAEA compliance analysis and to provide him with physical copies of the results of this analysis.

22. In addition he asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination, along with their medical or surgical equivalents (whether or not these were used), along with any reports or opinions regarding the claim from any physician or other professional, together with their names, qualifications and denial rates (collectively the "Plan Documents").

23. In a letter dated March 9, 2022, United upheld the denial of payment. The letter from Appeals Representative Neha Srivastava gave the following justification for the denial:

> Based on my review of the request, including any supporting documentation which may have been submitted with your appeal letter, I have determined that the submitted claim(s) for date(s) of service 09/23/2020 through 12/23/2020 have not been approved for payment. Per claims team, claims were appropriately processed. Per Optum Behavioral Health (OBH) guidelines, the service billed is not a covered service. Therefore, no adjustment done [sic].
>
> The purpose of this letter is to inform you that based on my review of the available information; I have determined that benefit coverage is not available for your admission to Open Sky Wilderness Therapy for the following date(s) of service: 09/23/2020 through 12/23/2020.

24. On April 28, 2022, P.C. submitted a level two appeal of the denial of payment for M.C.S.'s treatment.

25. P.C. continued to argue that M.C.S.'s treatment was a covered benefit under the Plan. He contended that United had failed to respect his rights under ERISA, had acted arbitrarily, had not provided him with clear or specific reasons for the denial, had not supported its decision using language from the insurance contract, had not addressed his concerns regarding a violation of MHPAEA, had not provided him with the documentation he requested, had ignored the concerns he raised in the appeal, and had not utilized an appropriately qualified reviewer.

26. P.C. reminded United that it had a fiduciary duty to act in his best interest. He asked United to rectify these errors, and to ensure that he received the full, fair, and thorough review to which he was entitled.

27. P.C. argued that outdoor behavioral health programs were not experimental, nor were they excluded under his insurance plan. He wrote that instead of the provisions of his

6

actual insurance contract, United appeared to have relied on internal criteria to deny payment.

28. He stated that although he was not provided with a copy of these criteria, he was able to obtain a copy on his own. He pointed out that the criteria should not have been used in the first place, as they clearly stated under the "Instructions for Use" heading:

> All reviewers must first identify member eligibility, the member-specific benefit plan coverage, and any federal or state regulatory requirements that supersede the member's benefits prior to using this guideline. In the event that the requested service or procedure is limited or excluded from the benefit, is defined differently or there is otherwise a conflict between this guideline and the member's specific benefit, the member's specific benefit supersedes this guideline.

29. He wrote that there was a clear conflict between these guidelines and the coverage outlined in the Plan, meaning that the internal wilderness policy should never have been applied.

30. He noted that the policy further stated that wilderness therapy was experimental and unproven, however he pointed out that Open Sky was duly licensed by both Utah and Colorado and operated within the scope of its license. In addition, the American Hospital Association and the National Uniform Billing Committee had assigned wilderness programs their own revenue code. He argued that these organizations would never have done this for an experimental service.

31. He further pointed out that wilderness programs had been proven effective through extensive research in peer reviewed literature. P.C. included some of these articles with the appeal. He asked United to disclose how it had determined wilderness care to be experimental and unproven, and what the qualifications were for the individual(s) who made this determination.

32. He noted that United's policy referred to outdoor behavioral health programs as "wilderness camps." He argued that this term was inapplicable and seemed to equate Open Sky with scout camps, boot camps, or adventure camps which were primarily for entertainment or recreational purposes and were not intended to have primarily therapeutic value.

33. P.C. also included determination letters from various external review agencies, which supported his contention that wilderness programs were not unproven or experimental. He asked in the event the denial was maintained, that United specify why the terms and conditions of the Plan appeared not to apply to M.C.S.'s case and he again asked for a copy of the Plan Documents.

34. In a letter dated May 24, 2022, United upheld the denial of payment. Although the letter was attributed to a different Appeals Representative, it was essentially word-for-word identical to the March 9, 2022, denial and made no attempt to address any of the arguments raised during the appeals process.

35. As the letter was functionally identical to the previous denial and both letters state that "per claims team" the denial was correct, it is not apparent what, if any, analysis was done, or even if the "claims team" was consulted again or if the original finding was simply reused. This is especially problematic given P.C.'s explicit and repeated requests for documentation, and United's statutory obligation to provide these materials upon request.

36. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

37. The denial of benefits for M.C.S.'s treatment was a breach of contract and caused P.C. to incur medical expenses that should have been paid by the Plan in an amount totaling over $55,000.

38. United failed to produce a copy of the Plan Documents including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities despite P.C.'s requests.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

39. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

40. United and the Plan failed to provide coverage for M.C.S.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

41. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

42. The denial letters produced by United do little to elucidate whether United conducted a meaningful analysis of P.C.'s appeals or whether it provided him with the "full and fair review" to which he is entitled. United failed to substantively respond to the issues

presented in P.C.'s appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

43. In fact, United's denial letters are essentially identical to each other, and show no indication that anything but the most surface level analysis was conducted. The letters do not even address any of the materials submitted with the appeal beyond stating that any supporting documentation which "may have been submitted" had been reviewed.

44. United and the agents of the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in Plaintiffs' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of Plaintiffs' claims.

45. The actions of United and the Plan in failing to provide coverage for M.C.S.'s treatment at Open Sky violate the terms of the Plan because the Plan purports to cover medically necessary treatment but excludes coverage for Open Sky asserting that it is experimental and investigational without providing any information, data, or justification for its position despite receiving extensive information from the Plaintiffs in the pre-litigation appeal process showing that treatment at Open Sky was not experimental and investigational and should have been covered under the terms of the Plan.

46. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

//

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

47. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of United's fiduciary duties.

48. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

49. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

50. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

51. The processes, strategies, evidentiary standards, and other factors used by Defendants in evaluating whether the intermediate level mental health treatment benefits at issue in this case were experimental and investigational, and, therefore, eligible for coverage, were

11

more stringent or restrictive than the processes, strategies, evidentiary standards or other factors used to evaluate whether medical or surgical treatment for analogous intermediate levels of medical or surgical benefits was experimental and investigational.

52. MHPAEA requires the Defendants to identify medical and surgical treatment analogues for the mental health and substance use disorder treatment provided at Open Sky in this case.

53. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.C.S.'s treatment at Open Sky include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

54. When United and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

55. United and the Plan evaluated M.C.S.'s mental health claims using processes, strategies, evidentiary standards, and other factors to evaluate whether the treatment at Open Sky was experimental and investigational that were more stringent and restrictive than the processes, strategies, evidentiary standards, and other factors they use to evaluate whether medical and surgical treatment in analogous levels of care is experimental and investigational.

56. The manner in which Defendants applied those processes, strategies, evidentiary standards, and other factors also deviates from generally accepted standards of medical practice in evaluating whether treatment is safe and effective to the point that it is no longer experimental and investigational and will be covered under the terms of the Plan.

57. The Defendants' actions resulted in a disparity that violated MHPAEA because the Plan denied coverage for M.C.S.'s treatment at Open Sky when it would have paid for treatment at analogous levels of medical or surgical care.

58. The processes, strategies, evidentiary standards, and other factors used to evaluate whether treatment for both mental health and medical and surgical care is experimental and investigational is extensive in demonstrating that the care provided at licensed outdoor behavioral health facilities like Open Sky has been accepted as being as safe and effective as other forms of intermediate inpatient treatment.

59. For example, the National Uniform Billing Committee, the organization responsible for developing and issuing revenue codes for services, has assigned wilderness programs such as Open Sky their own separate revenue and billing code.

60. The Defendants do not deny coverage based on an experimental and investigational exclusion treatment at analogous medical or surgical facilities which have been assigned a revenue code.

61. In addition, Open Sky is both licensed by the states of Utah and Colorado and accredited by the Association for Experiential Education, an organization establishing best practices and standards for outdoor behavioral healthcare, to provide therapeutic services for individuals with mental health and substance use disorders.

62. The Defendants do not deny coverage based on an experimental and investigational exclusion treatment at analogous medical or surgical facilities which have been licensed to provide those services and accredited by national standards organizations.

63. P.C. provided extensive evidence showing that Open Sky operated in accordance with generally accepted standards of medical practice, that it provided safe and effective

treatment in an intermediate inpatient setting, and that the care it provided was not experimental and investigational.

64. Despite this information, United refused or failed to address any of P.C.'s information and evidence and never deviated from its contention that the claims were not eligible for payment.

65. Defendants never provided any evidence or information for why they contended the Open Sky treatment was experimental and investigational nor did they produce any information or documentation showing they treated medical or surgical services in this way.

66. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the processes, strategies, evidentiary standards, and other factors utilized by the Plan and United, as written or in operation, limited coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

67. United and the Plan did not produce the documents the Plaintiffs requested to evaluate the treatment at Open Sky and Defendants' MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that United and the Plan were not in compliance with MHPAEA.

68. In fact, despite P.C.'s request that United and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, United and the Plan have not provided P.C. with any information about whether they have carried out any parity

compliance analysis and, to the extent that any such analysis was performed, United and the Plan have not provided P.C. with any information about the results of this analysis.

69. The violations of MHPAEA by United and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the facility eligibility criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

70. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for M.C.S.'s medically necessary treatment at Open Sky under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 23rd day of May, 2023.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiffs

County of Plaintiffs' Residence:
Fulton County, Georgia